I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 8/21/2014

DEPUTY CLERK

\* blank civil rights complaint form

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 1 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TALMADGE ADIB TALIB, | No. CV 14-5871-JAK (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| PETER NICHOLAS et al., | |
| Defendants. | |

## I.

## INTRODUCTION

Plaintiff Talmadge Adib Talib ("Plaintiff") filed a pro se civil rights Complaint on August 1, 2014. Dkt. 3 ("Complaint"); Dkt. 3-1 ("Complaint Pt. 2"); Dkt. 3-2 ("Complaint Pt. 3"). Plaintiff names the following Defendants: Los Angeles County Sheriff's Department ("LASD") Deputies Peter Nicholas, Edward Gonsalves, Fred Nunes, Moyer, and Antonio Sanchez;  LASD Captain Eliezer Vera; and "Miguel" and Rob Van Lingen, who are apparently an employee and the owner of Van Lingen Towing, respectively. Id. at 3-6.[1]

---

[1] Plaintiff has not identified either Moyer's first or Miguel's last name.

1  All Defendants are sued in both their individual and official capacities. Id.

2       In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must

3  screen the Complaint before ordering service for purposes of determining

4  whether the action is frivolous or malicious; or fails to state a claim on which

5  relief might be granted; or seeks monetary relief against a defendant who is

6  immune from such relief.

**II.**

**SUMMARY OF PLAINTIFF'S ALLEGATIONS**

9       Taking the allegations of the Complaint as true, the named LASD

10  Deputies pulled Plaintiff over on three separate occasions in 2012 and 2013 for

11  purely pretextual reasons. During these traffic stops the Deputies unlawfully

12  detained Plaintiff and unlawfully searched Plaintiff's person and his car. On

13  the third occasion the LASD Deputies also had Plaintiff's car unlawfully

14  towed away.

15  A.  <u>November 17, 2012 Traffic Stop</u>

16       On November 17, 2012, shortly after Plaintiff pulled out of a parking lot

17  and onto 153rd Street, he was pulled over by Sanchez, who requested Plaintiff's

18  license, registration, and proof of insurance. Complaint ¶ 12. Plaintiff asked

19  Sanchez why he stopped him; Sanchez told Plaintiff that it was because he

20  made a left turn without signaling. Id.

21       Plaintiff asked Sanchez to present his oath of office to prove that he was

22  in fact a peace officer. Id. ¶ 13. Sanchez put his hand on his gun and ordered

23  Plaintiff to step out of the car. Id. Feeling that his life was threatened, Plaintiff

24  got out of his car. Id. Sanchez ordered Plaintiff to put his hands behind his

25  back and handcuffed him. Id. Sanchez then searched and patted down

26  Plaintiff. Id. Sanchez took Plaintiff's wallet out of his pocket, walked Plaintiff

27  to the patrol car, and forced Plaintiff into the back seat. Id. ¶ 14.

28       Sanchez began asking Plaintiff various questions, such as whether

1  Plaintiff was on probation or parole or whether there were any weapons in the
2  car. Id. Plaintiff responded by asking Sanchez to call Sanchez's watch
3  commander to the scene because he was violating Plaintiff's rights. Id. ¶ 15.
4  Sanchez stated that he could arrest Plaintiff and have Plaintiff's car towed and
5  impounded. Id. Sanchez then searched Plaintiff's wallet, personal papers, and
6  all of the contents of Plaintiff's car. Id.

7        After completing the search, Sanchez returned to the patrol car and
8  asked Plaintiff what kind of car Plaintiff was driving. Id. ¶ 16. When Plaintiff
9  did not respond, Sanchez warned Plaintiff that if he continued to refuse to
10 answer his questions Sanchez would take him to jail. Id. Plaintiff told Sanchez
11 that he had already violated Plaintiff's rights by detaining Plaintiff, searching
12 his car, and demanding personal information. Id. Under "threat and duress"
13 Plaintiff told Sanchez what kind of car it was. Id. Sanchez then wrote Plaintiff
14 a citation, which he forced Plaintiff to sign. Id. Sanchez also "forced" Plaintiff
15 to provide a fingerprint. Id. Sanchez then released Plaintiff, returned to his
16 patrol car, and drove away. Id. The entire traffic stop lasted over an hour. Id.

17 **B.    April 24, 2013 Traffic Stop**
18       On April 24, 2013, Plaintiff was pulled over by Nunes and Moyer while
19 he was driving south on Vermont Avenue. Id. ¶ 17. Moyer came to Plaintiff's
20 window and requested Plaintiff's license and registration. Id. When Plaintiff
21 asked why he had been stopped, Moyer responded that it was "because he
22 wanted to and because he can." Id. Moyer then told Plaintiff to step out of the
23 car. Id. ¶ 18. Plaintiff refused and asked Moyer to show Plaintiff his oath of
24 office to prove that he was in fact a peace officer. Id. Moyer then put his hand
25 on his gun and ordered Plaintiff to get out of the car. Id. Nunes came to the
26 passenger window with his hand on his gun and also ordered Plaintiff out of
27 the car. Id. Feeling that his life was threatened, Plaintiff got out of his car. Id.
28 Moyer ordered Plaintiff to put his hands behind his back and handcuffed

1   Plaintiff, crushing his fingers together. Id.

2        Moyer searched Plaintiff and took Plaintiff's wallet out of his pocket. Id.

3   ¶ 19. Moyer walked Plaintiff to the patrol car and forced Plaintiff into the back

4   seat. Id. Moyer searched Plaintiff's wallet, personal papers, and the inside of

5   Plaintiff's car. Id.

6        While Moyer searched Plaintiff's car, Nunes came to the patrol car and

7   began asking Plaintiff questions. Id. ¶ 20. Plaintiff said that he was not

8   answering any questions and told Nunes that the officers were violating his

9   rights. Id. Plaintiff asked Nunes to identify himself and show Plaintiff his oath

10  of office, but Nunes refused. Id. ¶ 20. Plaintiff then asked Nunes to call his

11  watch commander to the scene because Plaintiff was subjected to a "false

12  arrest," to which Nunes replied, "we haven't arrested you." Id. ¶ 21. Plaintiff

13  then stated, "you have me held in confinement in the back of your car against

14  my will and you have guns . . . what do you call that?" Id. Nunes and Moyer

15  then walked away from Plaintiff and began speaking to each other on the

16  sidewalk.  Id. Nunes began talking on his cell phone, having a conversation

17  that lasted "30-35 minutes." Id. ¶ 22.

18       After Plaintiff had been detained over an hour, Nunes told Plaintiff that

19  he was giving Plaintiff a choice: he "could call his supervisor to the scene as

20  Plaintiff had requested, but he'd have to arrest Plaintiff and tow/impound

21  Plaintiff's car" or "[h]e could let Plaintiff go with a warning." Id. Plaintiff took

22  the warning "[u]nder threat and duress." Id. ¶ 23. Nunes opened the door and

23  released Plaintiff from the patrol car. Id. When Plaintiff got out of the car, he

24  asked Nunes for his business card. Id. Nunes and Moyer drove away. Id.

25  C.   **April 26, 2013 Traffic Stop**

26       Two days later, Nicholas and Gonsalves pulled Plaintiff over on

27  Hawthorne Boulevard near the same location as the November 2012 traffic

28  stop. Id. ¶ 24. Nicholas came to Plaintiff's window and asked Plaintiff if he

4

1   had a license. Id. ¶ 25. Plaintiff asked Nicholas why he was stopped and why
2   Nicholas needed to see his license. Id. Nicholas responded, "your lights." Id.
3   Nicholas told Plaintiff to step out of the car. Id. Plaintiff refused and asked
4   Nicholas to present his oath of office to prove that he was in fact a peace
5   officer. Id.  Plaintiff also asked Nicholas to call his watch commander to the
6   scene because it was very late at night and Nicholas was violating his rights.
7   Id. ¶ 26.

8         Nicholas put his hand on his gun and ordered Plaintiff out of the car. Id.
9   Gonsalves came to the other car window, put his hand on his gun, and ordered
10  Plaintiff to step out of the car. Id. ¶ 27. Feeling that his life was threatened,
11  Plaintiff got out of the car. Id. Gonsalves came around the car and ordered
12  Plaintiff to step away from the car and clasp his hands behind his back. Id.
13  Nicholas began searching Plaintiff's car. Id. Gonsalves then searched Plaintiff,
14  took his wallet out of his back pocket, and then handcuffed Plaintiff, during
15  which he "forcefully crush[ed]" Plaintiff's fingers and hands together. Id. ¶ 28.
16  Gonsalves walked Plaintiff over to the patrol car, placed him inside and took
17  Plaintiff's hat off. Id. Plaintiff yelled, "[D]on't touch me." Id. ¶ 29. Gonsalves
18  forced Plaintiff down into the back seat of the patrol car. Id. Gonsalves then
19  began searching Plaintiff's wallet and papers. Id. Nicholas came back to the car
20  and asked Plaintiff what kind of car he was driving and where the key to the
21  trunk was located. Id. ¶ 30. Plaintiff told Nicholas that they were acting
22  unlawfully and that the entire sheriff's station was harassing him by repeatedly
23  pulling him over. Id. Plaintiff also stated that he was now going to take action
24  to protect his rights and was not going to answer any more questions. Id.

25        Nicholas resumed searching Plaintiff's car as two more police cars pulled
26  up. Id. ¶ 31. Two officers got out of the cars and asked Nicholas whether he
27  and Gonsalves were alright, to which Nicholas replied, "Yeah, we got us a
28  lawyer here." Id. The other officer replied, "Oh, a pro per lawyer, huh." Id.

1  Nicholas replied, "Yeah, we're going to show him what we do for pro per
2  lawyers." Id. The other officer got back in his car and left. Id. ¶ 32. While
3  Gonsalves was filling out a report in the front seat of the patrol car, Nicholas
4  began talking on his cell phone. Id. In response to a question from Gonsalves,
5  Nicholas stated, "[T]echnically he's under arrest." Id.

6      After Plaintiff had been confined for over an hour in the patrol car, a tow
7  truck from Van Lingen Towing arrived. Id. ¶ 33. The driver, Miguel, loaded
8  Plaintiff's car onto the tow truck and left the scene with Plaintiff's car. Id.

9      Gonsalves then released Plaintiff from the patrol car, made Plaintiff sign
10 a citation, and told Plaintiff he was free to go. Id. ¶ 34. Plaintiff said, "[A]fter
11 you have unlawfully detained me against my will, demanded personal
12 information under threat, unlawfully searched, seized, assaulted and arrested
13 me and stole property from me, all you have to say is 'you can go now'? What
14 about my car?" Id. ¶ 35. Nicholas said, "[T]here is a file number on your
15 citation." Id. Nicholas and Gonsalves then returned to the patrol car and drove
16 away. Id.

### III.

### PLAINTIFF'S CLAIMS

19     Plaintiff sets forth twenty-eight claims for relief:
20     Plaintiff's first nine claims are against Sanchez for the first traffic stop.
21 Complaint at 14-22. His first six claims for relief allege violations of 42 U.S.C.
22 § 1983. Id. at 14-20. Plaintiff's first claim alleges a violation of his First
23 Amendment right to freedom of speech. Id. at 14-15. Plaintiff's second, third,
24 and fourth claims allege a violation of his Fourth Amendment rights to be free
25 from unreasonable searches of his person, unreasonable seizure of his person,
26 and unreasonable seizure of his personal effects, respectively. Id. at 16-18.
27 Plaintiff's fifth claim alleges that Sanchez violated his Fifth Amendment rights
28 by taking his property without just compensation. Id. at 18-19. Finally,

6

1   Plaintiff's sixth claim alleges that Sanchez violated his Fourteenth Amendment
2   right to due process. Id. at 19-20. Plaintiff's seventh claim alleges a state-law
3   claim of negligence. Id. at 20-21. His eighth claim alleges a state-law claim of
4   assault and battery. Id. at 21. Finally, his ninth claim alleges a state-law claim
5   of false imprisonment. Id. at 21-22.

6        Plaintiff's tenth through eighteenth claims for relief are alleged against
7   Moyer and Nunes for the April 24, 2013 traffic stop. Id. at 22-24; Complaint
8   Pt. 2 at 1-5. These claims mirror the nine claims against Sanchez.

9        Plaintiff's nineteenth through twenty-seventh claims involve the April
10  26, 2013 traffic stop and subsequent towing of his vehicle. Complaint Pt. 2 at
11  6-16. His nineteenth through twenty-first claims for relief are alleged against
12  Nicholas and Gonsalves. Id. at 6-9. These claims mirror the first three claims
13  against Sanchez. Id. Plaintiff's twenty-second claim alleges that Nicholas,
14  Gonsalves, Miguel, and Van Lingen violated his Fourth Amendment right to
15  be free of unreasonable seizure of his property. Id. at 9-10. Plaintiff's twenty-
16  third claim alleges that these same four Defendants as well as Vera violated his
17  Fifth Amendment right against taking of his property without just
18  compensation. Id. at 10-11. Plaintiff's twenty-fourth claim alleges that these
19  same five Defendants violated his Fourteenth Amendment right to due
20  process. Id.at 11-12. Plaintiff's twenty-fifth, twenty-sixth, and twenty-seventh
21  claims allege state-law claims of negligence, assault and battery, and false
22  imprisonment against the same five defendants. Id. at 12-14.

23       Finally, Plaintiff's twenty-eighth claim for relief alleges a state-law claim
24  of intentional infliction of emotional distress against all eight Defendants. Id.
25  at 14-15.

26  ///
27  ///
28  ///

# IV.

## STANDARD OF REVIEW

The Court's screening of the Complaint under the foregoing statutes is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a

8

1    complaint must contain sufficient factual matter, accepted as true, to 'state a

2    claim to relief that is plausible on its face.'  A claim has facial plausibility when

3    the plaintiff pleads factual content that allows the court to draw the reasonable

4    inference that the defendant is liable for the misconduct alleged." (internal

5    citation omitted)).

6         If the Court finds that a complaint should be dismissed for failure to state

7    a claim, the Court has discretion to dismiss with or without leave to amend.

8    Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to

9    amend should be granted if it appears possible that the defects in the complaint

10   could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also

11   Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro

12   se litigant must be given leave to amend his or her complaint, and some notice

13   of its deficiencies, unless it is absolutely clear that the deficiencies of the

14   complaint could not be cured by amendment") (citing Noll v. Carlson, 809

15   F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is

16   clear that a complaint cannot be cured by amendment, the Court may dismiss

17   without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v.

18   Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is

19   no need to prolong the litigation by permitting further amendment" where the

20   "basic flaw" in the pleading cannot be cured by amendment); Lipton v.

21   Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that

22   "[b]ecause any amendment would be futile, there was no need to prolong the

23   litigation by permitting further amendment").

24                                    IV.

25                              DISCUSSION

26   A.   **Plaintiff's Allegations Are Insufficient to State a Claim Against the**

27        **Defendants in Their Official Capacities**

28        Plaintiff names each of the Defendants in his or her official capacity. The

                                      9

1  Supreme Court has held that an "official-capacity suit is, in all respects other
2  than name, to be treated as a suit against the entity." Kentucky v. Graham, 473
3  U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985);
4  Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a
5  suit against the official personally, for the real party in interest is the entity."
6  Graham, 473 U.S. at 166. This Court will accordingly analyze whether
7  Plaintiff has stated a claim against the LASD.

8       A local government entity such as the LASD "may not be sued under §
9  1983 for an injury inflicted solely by its employees or agents. Instead, it is only
10  when execution of a government's policy or custom, whether made by its
11  lawmakers or by those whose edicts or acts may fairly be said to represent
12  official policy, inflicts the injury that the government as an entity is responsible
13  under § 1983." Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694
14  (1978). Thus, the LASD may not be held liable for the alleged actions of the
15  individual defendants whose alleged conduct gave rise to Plaintiff's claims
16  unless "the action that is alleged to be unconstitutional implements or executes
17  a policy statement, ordinance, regulation, or decision officially adopted or
18  promulgated by that body's officers," or if the alleged constitutional
19  deprivation was "visited pursuant to a governmental 'custom' even though
20  such a custom has not received formal approval through the body's official
21  decision-making channels." Monell, 436 U.S. at 690-91.

22       Here, Plaintiff has failed to identify any regulations or policy statements
23  of the LASD, or officially adopted or promulgated decisions from the LASD,
24  the execution of which by the individual Defendants allegedly inflicted the
25  injuries about which he is complaining. The Court therefore concludes that
26  Plaintiff has failed to allege sufficient facts for the Court to "draw the
27  reasonable inference" that the LASD has a governmental custom of engaging
28  in the kind of unconstitutional conduct that Plaintiff is alleging occurred here.

1   See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for

2   improper custom may not be predicated on isolated or sporadic incidents; it

3   must be founded upon practices of sufficient duration, frequency and

4   consistency that the conduct has become a traditional method of carrying out

5   policy."); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989)

6   ("Consistent with the commonly understood meaning of custom, proof of

7   random acts or isolated events are insufficient to establish custom."), overruled

8   on other grounds, Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir.

9   2010) (en banc). Accordingly, the Complaint fails to state a claim against the

10  Defendants in their official capacities.

11  **B.    Plaintiff Has Failed to Timely Comply with the California Tort**

12  **Claims Act**

13          Plaintiff alleges state-law claims for negligence, assault and battery, false

14  imprisonment, and intentional infliction of emotional distress. Under

15  California law, the filing of a tort claim in the time and manner prescribed by

16  state law is a prerequisite to the filing of a lawsuit against any state employee

17  or entity. Cal. Gov. Code §§ 905.2, 911.2, 945.4, 950.2; Munoz v. California,

18  33 Cal.App. 4th 1767, 1776 (1995). The California Tort Claims Act ("CTCA")

19  provides the requisites for the filing of a tort claim against state employees and

20  entities. Under the CTCA, a tort claim against a state employee or entity must

21  be presented to the California Victim's Compensation Government Claim

22  Board within six months of the accrual of the cause of action. See Cal.Gov.

23  Code § 911.2. Timely claim presentation is not merely a procedural

24  requirement but "a condition precedent to plaintiff's maintaining an action

25  against [a state employee or entity] defendant." California v. Super. Ct.

26  (Bodde), 32 Cal. 4th 1234, 1240 (2004). Failure to file a timely claim is fatal to

27  a cause of action for negligence or other state tort. See Hacienda La Puente

28  Unified Sch. Dist. of L.A. v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (citing

1    City of San Jose v. Super. Ct. (Lands Unlimited), 12 Cal. 3d 447, 454 (1974)).

2         Federal courts require compliance with the CTCA for pendant state law

3    claims that seek damages against state public employees or entities. Willis v.

4    Reddin, 418 F.2d 702, 704 (9th Cir. 1969); Mangold v. Calif. Pub. Utils.

5    Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). State tort claims included in a

6    federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the

7    claims were first presented to the state in compliance with the claim

8    presentation requirement. Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621,

9    627 (9th Cir. 1988); Butler v. L.A. Cnty., 617 F. Supp. 2d 994, 1001 (C.D. Cal.

10   2008) ("Although a plaintiff may include supplemental state law claims in a

11   civil rights action brought in federal court pursuant to 42 U.S.C. § 1983, the

12   state law claims are subject to dismissal for failure to allege compliance with

13   the claim-filing requirement of the CTCA.").

14        Here, a review of the Complaint shows that Plaintiff did not timely

15   comply with the California Tort Claims Act because he did not present his

16   claims within six months of their accrual. The actions which form the basis of

17   Plaintiff's state law claims occurred on November 17, 2012, April 24, 2013,

18   and April 26, 2013. However, Plaintiff did not file his administrative claim

19   until January 27, 2014, more than six months after the alleged tortious conduct

20   occurred. Complaint Pt. 2 at 23. In fact, the Los Angeles County Counsel

21   notified Plaintiff that his claim had been rejected for failure to timely file his

22   claim. Complaint Pt. 2 at 24; Complaint Pt. 3 at 1-4.

23        Therefore, Plaintiff's state-law claims for negligence, assault and battery,

24   false imprisonment, and intentional infliction of emotional distress must be

25   dismissed. See United States v. California, 655 F.2d 914, 918-20 (9th Cir.

26   1980) (concluding that state tort claim not presented in accordance with

27   California Tort Claims Act barred from consideration in federal action).

28

1  Accordingly, the Court dismisses these claims with leave to amend.[2]

2  **C.  Plaintiff Has Not Alleged That Defendants Miguel and Van Lingen**

3  **Are State Actors for Purposes of Section 1983 Liability**

4  Plaintiff alleges that defendants Miguel and Rob Van Lingen violated his

5  Fourth, Fifth, and Fourteenth Amendment rights by towing his car on April

6  26, 2013. Complaint Pt. 2 at 9-12. In order to state a claim for a civil rights

7  violation under § 1983, Plaintiff must allege that the defendant deprived him of

8  a right guaranteed under the Constitution or a federal statute, while acting

9  under color of state law. The ultimate issue in determining whether a person is

10  subject to suit under § 1983 is whether the alleged infringement of federal rights

11  is fairly attributable to the government. Rendell-Baker v. Kohn, 457 U.S. 830,

12  838 (1982); see also Huffman v. Cnty. of L.A., 147 F.3d 1054, 1057 (9th Cir.

13  1998) (holding that a defendant must have acted "under color of law" to be

14  held liable under § 1983).  Simply put, section 1983 "excludes from its reach

15  merely private conduct, no matter how discriminatory or wrong." American

16  Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999) (citations and internal

17  quotations omitted).

18  Because Miguel, the tow truck driver, and Rob Van Lingen, owner of the

19

20  [2] Additionally, Plaintiff's claims for assault and battery should be
separately alleged. Assault is "a demonstration of an unlawful intent by one

21  person to inflict immediate injury on the person of another then present."

22  Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1603-04 (2012). Battery is "any
intentional, unlawful and harmful contact by one person with the person of

23  another." Ashcraft v. King, 228 Cal. App. 3d 604, 611 (1991). Thus, under

24  California law, assault and battery are two conceptually distinct causes of
action. Brown v. Ransweiler, 171 Cal. App. 4th 516, 523 n. 6 (2009).

25  Accordingly, these two claims should be separately stated. See, e.g., Garcia v.

26  City of Merced, 637 F. Supp. 2d 731, 748 (E.D. Cal. 2008); Cuviello v. Feld
Entertainment, Inc., No. 13-3135, 2014 WL 1379849, at *4 (N.D. Cal. April 7,

27  2014).

28

13

1  tow truck company, are private actors, Plaintiff may not bring a cause of action
2  under § 1983 unless Plaintiff sufficiently alleges that Miguel and Van Lingen
3  conspired or acted jointly with a state actor to deprive Plaintiff of his
4  constitutional rights. See United Steelworkers of Am. v. Phelps Dodge Corp.,
5  865 F.2d 1539, 1540 (9th Cir. 1989) ("Private parties act under color of state
6  law if they willfully participate in joint action with state officials to deprive
7  others of constitutional rights.") (en banc). The allegations of the complaint
8  must support the inference that Miguel and Van Lingen and any person acting
9  under color of state law reached an "agreement or meeting of the minds to
10  violate [Plaintiff's] constitutional rights." Id. at 1540-41 (internal quotation
11  marks omitted); see also Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 1992)
12  (concluding that a "substantial degree of cooperation" with a state official is
13  required to impose civil liability on private individuals for actions that
14  "impinge on civil rights"). Conclusory allegations are insufficient to establish
15  that a private individual was conspiring or acting jointly with a state actor.
16  Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (holding
17  that "bare allegation" of "joint action will not overcome a motion to dismiss;
18  the plaintiff must allege facts tending to show that [Defendants] acted under
19  color of state law or authority") (quoting DeGrassi v. City of Glendora, 207
20  F.3d 636, 647 (9th Cir. 2000)); Simmons v. Sacramento Cnty. Superior Ct.,
21  318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff's conclusory allegations that the
22  lawyer was conspiring with state officers to deprive him of due process are
23  insufficient.").

24      Here, Plaintiff had not alleged any facts to show that Miguel or Rob Van
25  Lingen conspired or acted jointly with a state actor to deprive Plaintiff of his
26  constitutional rights. Plaintiff merely alleges that Defendants Nicholas and
27  Gonzales violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights
28  by searching his car and taking it without due process of law "with the support

1    and assistance of Miguel and Van Lingen Towing." Complaint Pt. 2 at 9, 10,

2    12. This allegation is insufficient to show that Miguel or Rob Van Lingen

3    conspired or acted jointly with any state actor to violate Plaintiff's

4    constitutional rights. Such a bare allegation of joint action does not

5    demonstrate the kind of substantial degree of cooperation necessary to state a

6    claim for relief. Accordingly, Plaintiff has failed to state a claim for relief

7    against Miguel or Rob Van Lingen.

8    **D.    Plaintiff Has Failed to Allege Any Facts to Establish Supervisory**

9        **Liability Against Defendant Vera**

10          Plaintiff alleges that LASD Captain Vera, who Plaintiff alleges is the

11   direct supervisor of the other LASD Defendants, violated his Fifth and

12   Fourteenth Amendment rights by failing to provide a proper response to

13   Plaintiff's May 20, 2013 letter regarding the incidents alleged in the Complaint.

14   Complaint Pt. 2 at 11. Plaintiff contends that the inadequate response by Vera

15   to Plaintiff's letter gave "tacit authorization" to the alleged constitutional

16   violations committed by the other LASD Defendants. Id. at 11, 12.

17          Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on

18   any theory of respondeat superior or vicarious liability in the absence of a state

19   law imposing such liability. See, e.g., Redman v. Cnty. of San Diego, 942 F.2d

20   1435, 1446 (9th Cir. 1991). In Iqbal, the Supreme Court reaffirmed that

21   "[g]overnment officials may not be held liable for the unconstitutional conduct

22   of their subordinates under a theory of respondeat superior liability." 556 U.S.

23   at 676. However, the Ninth Circuit has concluded that, at least in cases where

24   the applicable standard is deliberate indifference (such as for an Eighth

25   Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for

26   supervisory liability based upon the "supervisor's knowledge of and

27   acquiescence in unconstitutional conduct by his or her subordinates." Starr v.

28   Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). The Ninth Circuit thus held:

15

1    A defendant may be held liable as a supervisor under § 1983

2  'if there exists either (1) his or her personal involvement in the

3  constitutional deprivation, or (2) a sufficient causal connection

4  between the supervisor's wrongful conduct and the constitutional

5  violation.' '[A] plaintiff must show the supervisor breached a duty

6  to plaintiff which was the proximate cause of the injury. The law

7  clearly allows actions against supervisors under section 1983 as

8  long as a sufficient causal connection is present and the plaintiff

9  was deprived under color of law of a federally secured right.'

10    'The requisite causal connection can be established . . . by

11  setting in motion a series of acts by others,' or by 'knowingly

12  refus[ing] to terminate a series of acts by others, which [the

13  supervisor] knew or reasonably should have known would cause

14  others to inflict a constitutional injury.' 'A supervisor can be liable

15  in his individual capacity for his own culpable action or inaction in

16  the training, supervision, or control of his subordinates; for his

17  acquiescence in the constitutional deprivation; or for conduct that

18  showed a reckless or callous indifference to the rights of others.'

19  Id. at 1207-08 (internal citations omitted, alterations in original). In addition,

20  to premise a supervisor's alleged liability on a policy promulgated by the

21  supervisor, plaintiff must identify a specific policy and establish a "direct

22  causal link" between that policy and the alleged constitutional deprivation.

23  See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce,

24  954 F.2d 1470, 1474 (9th Cir. 1992).

25    Here, Plaintiff names Vera as a Defendant solely on the basis that he is

26  the supervisor of the other LASD Defendants but fails to set forth any specific

27  allegations that Vera personally participated in the underlying alleged

28  violations of Plaintiff's constitutional rights. Nor does Plaintiff set forth any

factual allegations that Vera either personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to the other Defendants' alleged conduct. Vera's alleged failure to adequately respond to Plaintiff's letter of complaint does not establish supervisory liability against him. Accordingly, Plaintiff has failed to state a claim for relief against Vera.

## V.

## CONCLUSION

Because Plaintiff's official-capacity claims, his state-law claims, his claims against Miguel and Rob Van Lingen, and his claims against Vera fail to state claim on which relief may be granted, the Complaint is subject to dismissal. Because it is not absolutely clear that Plaintiff's pleading deficiencies cannot be cured by amendment, such dismissal will be with leave to amend. Accordingly, if Plaintiff still desires to pursue his claims, he shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: August 21, 2014

DOUGLAS F. McCORMICK

_____

DOUGLAS F. McCORMICK
United States Magistrate Judge